**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY,

      Plaintiff,

    v.

U.S. XPRESS, INC., et al.,

      Defendants.

CIVIL ACTION NO. 3:22-CV-00700

(MEHALCHICK, J.)

**MEMORANDUM**

The Travelers Home and Marine Insurance Company ("Travelers") initiated this action as subrogee of Robert Stroka by filing a complaint on May 12, 2022. (Doc. 1). Travelers filed the operative amended complaint on September 20, 2022, alleging Defendants, U.S. Xpress, Inc. ("U.S. Xpress") and Matthew Vomero ("Vomero") (together, "Defendants"), are liable for negligence in connection with a truck accident. (Doc. 16). Before the Court is Travelers's motion to exclude expert testimony (Doc. 57), Travelers's motion for summary judgment (Doc. 58), and Defendants' motion for partial summary judgment. (Doc. 69). For the reasons provided herein, Travelers's motions are denied, and Defendants' motion is granted.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 59; Doc. 66; Doc. 71; Doc. 74). On June 3, 2020, Vomero was driving a tractor trailer when his vehicle crashed into a building insured by Travelers. (Doc. 71, ¶ 1; Doc. 74, ¶ 1). At the time of the accident, Vomero was acting in the course and scope of his employment with U.S. Xpress. (Doc. 71, ¶ 7; Doc. 74, ¶ 7). Defendants assert that Vomero had a syncopal episode from laughing prior to the accident, causing him to lose consciousness and crash. (Doc. 59, ¶ 2; Doc. 66, ¶ 2). The parties dispute whether Defendants have presented admissible evidence supporting their assertion that Vomero had such a medical incident, and Travelers asserts that Vomero merely fell asleep while driving. (Doc. 59, ¶¶ 11, 14; Doc. 66, ¶¶ 11, 14).

On August 11, 2025, Travelers filed a motion to exclude expert testimony and a motion for summary judgment. (Doc. 57; Doc. 58). On August 12, 2025, Travelers filed a statement of facts, and briefs in support of both motions. (Doc. 59; Doc. 60; Doc. 61). On August 25, 2025, Defendants filed a brief in opposition to the motion to exclude expert testimony. (Doc. 65). On September 2, 2025, Defendants filed a response to Travelers's statement of facts and a brief in opposition to Travelers's motion for summary judgment (Doc. 65; Doc. 66). Travelers timely filed reply briefs in support of both motions. (Doc. 64; Doc. 75).

On September 5, 2025, Defendants filed a motion for summary judgment along with a brief in support and statement of facts. (Doc. 69; Doc. 70; Doc. 71). On September 15, 2025,

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record, in the light most favorable to the non-moving party.

Travelers filed a brief in opposition along with a response to Defendants' statement of facts. (Doc. 72; Doc. 74). On September 29, 2025, Defendants filed a reply brief. (Doc. 75).

## II.    DISCUSSION

Defendants' expert, Dr. Adam C. Sobel ("Sobel"), a physician, offers an expert opinion that prior to crashing his tractor trailer, Vomero suffered a "syncopal episode" as a result of laughing, causing him to lose consciousness and the ability to steer his vehicle. (Doc. 63-1, at 7-8; Doc. 63-2, at 55-56). Travelers moves to exclude Sobel's testimony under Rule 702. (Doc. 60, at 10-12). Travelers also moves for summary judgment arguing that Defendants' only viable defense is that Vomero suffered a sudden medical emergency prior to the accident, and Defendants cannot establish such a defense without Sobel's purportedly inadmissible testimony. (Doc. 61, at 8-12). Defendants move for partial summary judgment on all direct claims against U.S. Xpress arguing that U.S. Xpress cannot be held directly liable because Defendants concede that U.S. Xpress would be vicariously liable for Vomero's actions if Vomero is found negligent and Travelers does not seek punitive damages. (Doc. 70, at 2-6).

### A.  TRAVELERS'S MOTION TO EXCLUDE

Travelers avers that Sobel's testimony is based on his subjective beliefs rather than reliable scientific principles and methods and thus, the Court must exclude his testimony under Rule 702. (Doc. 60, at 10-12). Travelers further argues that even if Sobel's testimony were based on reliable principles and methods, it should be excluded because Sobel couches his conclusions with phrases such as "more likely than not" and "more probable than not" which indicates that his testimony is mere guesswork. (Doc. 60, at 11-12).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e. reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)). An expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualification requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994); *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials").

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective

4

belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court noted that the assessment of whether testimony is based on a reliable foundation is "flexible." 509 U.S. at 594.

The third Rule 702 requirement is that "the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

When determining whether proposed expert testimony is admissible under Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

Generally, physicians are considered qualified experts even where their testimony is about a field of medicine outside of their specialty. *See Cree v. Hatcher*, 969 F.2d 34, 38 n.5 (3d Cir. 1992); *see also Nichols v. Morrisey*, No. 2:23-CV-00637, 2024 WL 871322, at *2 (E.D. Pa. Feb. 29, 2024). Reliability is a "flexible" standard. *Paoli*, 35 F.3d at 742 (3d Cir. 1994); *see also Colon v. Kinnel*, No. 5:21-CV-03337, 2023 WL 2071367, at *3 (E.D. Pa. Feb. 17, 2023). Courts

should deny motions to exclude expert testimony where the movant's challenge is based on the expert disagreeing with the movant over a contested question of fact. *See Walker v. Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002) (nonprecedential) (stating "[a]n expert is, nonetheless, permitted to base his opinion on a particular version of disputed facts"); *see also Johnson v. Duffy*, 855 F. Supp. 2d 311, 320 (M.D. Pa. 2012) (stating the same). A physician presents reliable testimony by reaching a conclusion through differential diagnosis. *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997), *as amended* (Dec. 12, 1997); *see also In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 890 F. Supp. 2d 552, 562 (E.D. Pa. 2012). Differential diagnosis involves a physician considering various conditions an individual may have experienced and reaching a conclusion as to which condition occurred by ruling out the other conditions based on the physician's medical expertise and review of evidence in the record. *See Kannankeril*, 128 F.3d at 807; *see also In re Diet Drugs*, 890 F. Supp. 2d at 562. A physician is not required to personally conduct a physical examination of an individual to reach a reliable conclusion regarding that individual's medical condition so long as the physician examined the individual's medical records and other evidence in the record. *See Kannankeril*, 128 F.3d at 807; *see also Lorenzo-Noda v. Kazak*, No. CV 18-13414, 2025 WL 900404, at *3 (D.N.J. Mar. 24, 2025) (noting that while a physical examination "would have strengthened [the expert's] opinion" because the expert reviewed the plaintiff's medical records, the absence of a physical examination spoke "to the weight of the expert testimony" rather than admissibility). Further, a physician is not required to cite to scholarly articles supporting their position and may reliably testify based off their experience and medical expertise. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999); *see also Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 499 (D.N.J. 2002); *see also*

6

*Wichterman v. City of Philadelphia*, No. CV 16-5796, 2019 WL 2568340, at \*9 (E.D. Pa. June 20, 2019).

In diversity cases applying Pennsylvania tort law, for a medical expert's opinion to be both reliable and helpful to the jury (i.e. meet the "fit" requirement), the expert must testify that he made a diagnosis or came to a medical conclusion with "a *reasonable degree* of medical certainty." *Heller*, 167 F.3d at 153 n.4 (emphasis in original); *see Keller v. Feasterville Fam. Health Care Ctr.*, 557 F. Supp. 2d 671, 676 (E.D. Pa. 2008). While the reasonable degree of medical certainty standard recognizes that physicians often cannot reach a conclusion with one hundred percent certainty, it is insufficient for an expert physician to testify that his diagnosis or conclusion is merely "more likely than not." *Hoefling v. U.S. Smokeless Tobacco Co., LLC*, 576 F. Supp. 3d 262, 286 (E.D. Pa. 2021) (stating "[a] reasonable degree of medical certainty requires more than a finding by a preponderance of the evidence"); *see also Hook v. Whiting Door Mfg. Corp.*, No. CV 3:15-281, 2019 WL 7515289, at \*4 (W.D. Pa. Sept. 3, 2019) (stating "[a] 'reasonable degree of [medical] certainty' is just that, however—reasonable; neither absolute nor certain" but noting that "[l]anguage such as 'possibly' or 'could have' is insufficient under this standard"). It is not the Court's role to determine whether a jury would be persuaded to a reasonable degree of medical certainty that an individual suffered from a condition. *See Redland Soccer Club, Inc.*, 55 F.3d 827, 852-53 (3d Cir. 1995) (noting that the Court's role at summary judgment is not to determine whether an expert's "testimony will persuade the factfinder"); *see also Alfrey v. Whitley*, No. 3:21-CV-01629, 2024 WL 3833322, at \*1 (M.D. Pa. July 26, 2024) (stating "[t]o the extent the defendants challenge the certainty of [the expert]'s opinions, their challenge goes to the weight of the evidence, not its admissibility"). Rather, the Court must determine whether the expert is willing to testify to a

reasonable degree of medical certainty. *See Redland Soccer Club, Inc.*, 55 F.3d at 852-53; *see also Alfrey*, 2024 WL 3833322, at *1. A court should not exclude expert testimony prior to trial where the expert explicitly stated in a deposition or report that they reached their conclusions to a reasonable degree of medical certainty but also made statements which seemingly contradict that assertion because such contradictions speak the credibility of the expert not admissibility. *See Redland Soccer Club, Inc.*, 55 F.3d at 852-53 (reversing a district court's grant of summary judgment because the district court improperly discounted parts of an expert's testimony where the expert explicitly stated that he reached his conclusions with a reasonable degree of medical certainty); *see also Hook*, 2019 WL 7515289, at *4 (stating "[t]he fact that 'an expert may have used less definite language does not render his entire opinion speculative if at some time . . . he expressed his opinion with reasonable certainty'" (quoting *Vicari v. Spiegel*, 936 A.2d 503, 509 (Pa. Super. Ct. 2007), *aff'd*, 605 Pa. 381, 989 A.2d 1277 (2010)); *see also Newhouse v. GEICO Cas. Co.*, No. 4:17-CV-00477, 2019 WL 1082640, at *2 (M.D. Pa. Mar. 7, 2019) (denying a motion to exclude expert testimony where an expert made both statements consistent with the reasonable degree of medical certainty standard and inconsistent with the standard).

Travelers does not challenge Sobel's qualifications but seeks to have Sobel's testimony excluded as unreliable and unhelpful to the jury because 1) his testimony is not supported by evidence in the record, 2) Sobel did not review enough of the record to come to a reliable conclusion, 3) Sobel does not cite to any scholarly materials supporting his diagnosis, and 4) Sobel fails to testify that he came to his conclusions with a reasonable degree of medical certainty. (Doc. 60, at 10-12). The Court finds Travelers's argument that Sobel's testimony is unreliable to be contradicted by evidence in the record. (Doc. 60, at 10). Travelers avers that

8

the record, which includes a video of the crash, establishes that Vomero was not laughing prior to the crash but rather, simply fell asleep while driving. (Doc. 60, at 10). According to Travelers, because Vomero was not laughing prior to the crash, Sobel's conclusion that Vomero suffered a laughter induced syncopal episode is frivolous. (Doc. 60, at 10). However, Defendants present the testimony of Nicholas Rice ("Rice"), a fellow truck driver, who stated that he was speaking with Vomero on the phone prior to and during the crash. (Doc. 63-5, at 29-30). Rice testified that during his phone call with Vomero, he heard Vomero laughing, heard Vomero go silent for fifteen to twenty seconds, and then heard a crash. (Doc. 63-5, at 29-30). Defendants further present Vomero's testimony in which he stated that prior to the crash, he was laughing and joking with Rice but cannot recall what happened next. (Doc. 63-3, at 60-61). The video of the crash begins approximately six seconds before Vomero's vehicle veers off the road, hits a road guard, and crashes. (Travelers's Exhibit F Flash Drive). According to Rice, Vomero stopped laughing and went silent fifteen to twenty seconds before the crash so under Rice's versions of events, Vomero would have been silent during those six seconds. (Travelers's Exhibit F Flash Drive; Doc. 63-5, at 29). In the video, Vomero does not make any clear noises during the six seconds, so a reasonable jury could conclude that Rice's testimony is supported by the video. (Travelers's Exhibit F Flash Drive). Based on this evidence, a reasonable jury could conclude that Vomero was laughing prior to the incident, and the Court may not find Sobel's testimony unreliable or unhelpful simply because it relies on one version of a genuine dispute of material fact. *See Walker*, 46 F. App'x at 695-96; *see also Johnson*, 855 F. Supp. 2d at 320.

The Court further rejects Travelers's assertion that Sobel did not review sufficient evidence to come to a reliable medical conclusion. (Doc. 60, at 10-11). According to Sobel's

report, Sobel reviewed Vomero's medical records, lab tests, and various other parts of the record such as a police report and Vomero's deposition transcript. (Doc. 63-1, at 5). Sobel's review of the record is sufficient because he reviewed Vomero's medical records and testimony and questions regarding whether he should have reviewed additional evidence speak to weight rather than admissibility. *See Kannankeril*, 128 F.3d at 807; *see also Lorenzo-Noda*, 2025 WL 900404, at \*3. Further, Sobel relied on the reliable method of differential diagnosis because Sobel testified that based off his review of the record and his medical expertise, he concluded that Vomero could not have fallen asleep, as Travelers claims he did, but instead, lost consciousness due to a laughter induced syncopal episode. (Doc. 63-2, at 54-55); *see Kannankeril*, 128 F.3d at 807; *see also In re Diet Drugs*, 890 F. Supp. 2d at 562.

The Court similarly rejects Travelers's contention that Sobel's conclusions regarding a laughter induced syncopal episode are unreliable because Sobel does not cite to any scholarly articles regarding such a condition. (Doc. 60, at 11). A medical expert is not required to cite to scholarly or peer reviewed articles in order to provide a reliable opinion and Traveler's own expert, Dr. Jeffrey S. Fierstein, acknowledges that a laughter induced syncopal episodes are "recognized in medical literature." (Doc. 63-6, at 6); *See Yarchak*, 208 F. Supp. 2d at 499; *see also Wichterman*, 2019 WL 2568340, at \*9.

Finally, the Court does not accept Travelers's conclusion that Sobel's testimony is neither reliable nor helpful to the jury because he does not testify that he reached his conclusions to a reasonable degree of medical certainty. (Doc. 60, at 11-12). The Court acknowledges that Sobel's report contains statements such as "[i]t is more probable than not that a person laughing does not simply fall asleep . . . [and it is] more likely than not [that Vomero] had a syncopal episode." (Doc. 63-1, at 8). While such language would indicate that

Sobel did not reach his conclusions to the degree of medical certainty required by Pennsylvania law, *see Hoefling*, 576 F. Supp. 3d at 286, during his deposition, Sobel testified that there was close to a one hundred percent chance that Vomero did not fall asleep prior to the accident and confirmed that he reached his opinions to a reasonable degree of medical certainty. (Doc. 63-2, at 55-56). While a reasonable jury could choose to discredit Sobel's testimony due to perceived inconsistencies, Sobel's testimony is sufficient for purposes of the instant motion and such inconsistencies are proper topics for cross examination. *See Redland Soccer Club, Inc.*, 55 F.3d at 852-53; *see also Hook*, 2019 WL 7515289, at *4; *see also Newhouse*, 2019 WL 1082640, at *2. Accordingly, Traveler's motion to exclude Sobel's testimony is **DENIED**. (Doc. 57).

B. TRAVELERS'S MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed

by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like, to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

Travelers avers that it is entitled to summary judgment because Defendants' only viable defense is the sudden medical emergency doctrine and there is no admissible evidence in the record suggesting Vomero suffered from a sudden medical emergency. (Doc. 61, at 12). Travelers's argument is reliant on the Court excluding Sobel's testimony. (Doc. 61, at 8-12). Defendants counter that they present evidence sufficient to establish a genuine dispute of material fact regarding the sudden medical emergency doctrine through Sobel's testimony, lay testimony, and video evidence. (Doc. 65, at 4-13).

Under Pennsylvania law, the sudden medical emergency doctrine is an affirmative defense against negligence claims in which a defendant involved in a car crash must prove that the crash was caused by an unforeseeable sudden loss of consciousness or another temporary incapacitation. *See Shiner v. Ralston*, 64 A.3d 1, 4-5 (Pa. Super. Ct. 2013) (stating "[u]nforeseeable loss of consciousness, if proven, is a complete defense to negligence, and the defendant bears the burden of establishing the defense"); *see also Jones v. Cobbs*, 258 A.3d 520 at *2 (Pa. Super. Ct. 2021) (considering whether the doctrine applied to a driver who experienced a seizure while driving). The application of the doctrine is generally a fact-based inquiry for a jury to decide unless there is no conflicting evidence in the record regarding whether 1) the defendant was incapacitated by a sudden medical incident or 2) the medical

incident was unforeseeable. *See Shiner*, 64 A.3d at 5 (finding that the application of the medical emergency doctrine was a question for the jury where there was conflicting evidence regarding whether a plaintiff suffered from an unforeseeable heart event while driving); *see also Jones*, 258 A.3d at *2-3 (finding the same where the record contained conflicting evidence regarding whether a seizure rendered a driver fully incapacitated); *see also Yenchik Elliott v. GTC Logistics, Inc.*, No. 3:23-CV-00194, 2025 WL 257603, at *6 (M.D. Pa. Jan. 21, 2025) (denying summary judgment where "the record contain[ed] disputes of material fact about whether there was a sudden emergency [prior to a car accident] and the cause of [the emergency]").

As discussed *supra* Section II.A, Sobel's testimony is admissible. A reasonable jury could conclude based off Sobel's testimony that Vomero suddenly lost consciousness due to an unexpected medical event prior to the accident. (Doc. 63-1, at 7-8; Doc. 63-2, at 55-56). Further, even outside of Sobel's testimony, Rice testified that he heard Vomero laughing before Vomero suddenly went silent fifteen to twenty seconds before Rice heard the crash. (Doc. 63-5, at 29-30). Vomero testified that he remembers laughing and joking with Rice prior to the accident but cannot remember anything after that. (Doc. 63-3, at 60-61). The video of the crash shows Vomero not making any clear noises approximately six seconds before veering off the road. (Travelers's Exhibit F Flash Drive). The video could support either a conclusion that Vomero lost consciousness as Defendants contend or fell asleep as Travelers contends. As there is contradictory evidence regarding whether Vomero suddenly and unexpectedly lost consciousness and the application of the sudden medical emergency is a jury question, Travelers's motion for summary judgment is **DENIED**. *See Shiner*, 64 A.3d at 5; *see also Jones*, 258 A.3d at *2-3; *see also Yenchik Elliott*, 2025 WL 257603, at *6.

C. DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

14

Travelers alleges that U.S. Xpress is both directly liable for its own negligence and vicariously liable for Vomero's negligence. (Doc. 16, ¶¶ 19-25). Defendants aver that U.S. Xpress cannot be both directly and vicariously liable unless Travelers seeks punitive damages. (Doc. 70, at 2-6). According to Defendants, they are entitled to summary judgment on Travelers's direct claims against U.S. Xpress because Defendants concede that U.S. Xpress would be vicariously liable for Vomero's actions should Vomero be found negligent and Travelers does not assert a claim for punitive damages. (Doc. 70, at 2-6). Travelers avers that it may assert direct and vicarious claims against U.S. Xpress because U.S. Xpress was negligent in hiring and training Vomero. (Doc. 72, at 5-15).

Under Pennsylvania law, an employer could be held vicariously liable for the negligence of its employees through a *respondeat superior* theory or directly liable for "negligent entrustment, instruction, supervision, monitoring, and hiring of its employees." *Carson v. Tucker*, 530 F. Supp. 3d 560, 563 (E.D. Pa. 2021). However, negligence cases in which an employer is held liable both vicariously and directly liable typically involve claims for punitive damages. *See Scampone v. Highland Park Care Ctr., LLC*, 618 Pa. 363, 369 (2012) (finding a nursing home could be held both vicariously liable for the actions of its staff and directly liable for negligent hiring and supervision where the plaintiff sought punitive damages); *see also Carson*, 530 F. Supp. 3d at 565 n.1 (distinguishing cases). While the Pennsylvania Supreme Court has not addressed the issue, the majority rule amongst states is that direct claims against an employer should be dismissed where the employer concedes that they may be vicariously liable for their employees' negligence and the plaintiff does not seek punitive damages. *See Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807, 812 (E.D. Pa. 2023) (describing the majority rule); *see also Calhoun v. Van Loon*, No. 3:12-CV-458, 2014 WL 3428876, at *4 (M.D. Pa. July

15

11, 2014) (describing the same). Pennsylvania federal courts have consistently applied the majority rule and granted defendants' motions for partial summary judgment on direct liability claims against employers where 1) the employer concedes that it may be vicariously liable if their employee is found negligence and 2) the plaintiff does not seek punitive damages.[2] *See Carson*, 530 F. Supp. 3d at 563; *see also Calhoun*, 2014 WL 3428876, at *6; *see also Collins v. Tate*, No. 2:17-CV-00318, 2019 WL 3817570, at *6 (W.D. Pa. Aug. 14, 2019). As noted by Defendants, Chief Judge Brann of this Court recently applied the majority rule in a case involving U.S. Xpress and granted U.S. Xpress summary judgment on all direct claims against it where 1) U.S. Xpress conceded that it may be held vicariously liable if its employee was found negligent and 2) the court dismissed all claims for punitive damages against U.S. Xpress. (Doc. 76; Doc. 76-1, at 20-21).

Here, it is undisputed that "Vomero was acting in the course and scope of his employment with [U.S. Xpress] at the time of the incident giving rise to this litigation." (Doc. 71, ¶ 7; Doc. 74, ¶ 7). Defendants concede that if Vomero is found liable, U.S. Xpress "would be [vicariously] liable under the doctrine of *respondeat superior*." (Doc. 70, at 2). It is further undisputed that Travelers "has not sought punitive damages." (Doc. 71, ¶ 10; Doc. 74, ¶ 10). Under the majority rule applied by Pennsylvania federal courts, Defendants are entitled to

---

[2] The Court notes that in *Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807, 813 (E.D. Pa. 2023), a court in the Eastern District of Pennsylvania declined to adopt the majority rule. However, the *Villagran* court nonetheless granted an employer summary judgment on direct claims against it because the court found that the evidence of the employer's negligence was inadmissible due to the evidence having little probative value where the employer admitted it would be vicariously liable if its employee was found negligent and the plaintiff did not seek punitive damages. 698 F. Supp. 3d at 813; see also *Galovich v. Morrissette*, No. 3:21-CV-1532, 2024 WL 2962843, at *14-16 (M.D. Pa. June 12, 2024) (granting summary judgment on direct claims against an employer and noting that summary judgment is warranted under either the majority rule or the *Villagran* rule).

16

summary judgment on Travelers's direct claims against U.S. Xpress. *See Carson*, 530 F. Supp. 3d at 563; *see also Calhoun*, 2014 WL 3428876, at *6; *see also Collins*, 2019 WL 3817570, at *6. U.S. Xpress may still be held vicariously liable if Vomero is found negligent. Defendants' motion for partial summary judgment is **GRANTED**. (Doc. 69).

III.   CONCLUSION

For the foregoing reasons, Travelers's motion to exclude expert testimony (Doc. 57) and motion for summary judgment (Doc. 58) are **DENIED**. Defendants' motion for partial summary judgment is **GRANTED**. (Doc. 69). Travelers's direct claims against U.S. Xpress are **DISMISSED**.

An appropriate Order follows.

**Dated: February 25, 2026**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**